UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 14-328 (JRT/FLN)

        Plaintiff,

        v.                                        **REPORT AND**
                                               **RECOMMENDATION**

Jeffrey Alan Peterson**,**

        Defendant.

---

Sarah Hudleston, Assistant United States Attorney, for Plaintiff.
Kyle White for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 11, 2014 on Defendant's motions to suppress (ECF Nos. 21 and 22). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The government called Task Force Officer (TFO) Dale Hanson as a witness and introduced three exhibits into evidence: the search warrant for Defendant's home (Ex. 1); a photograph of Defendant's kitchen area (Ex. 2); and a copy of the audio recording of TFO Hanson's interview with Defendant (Ex. 3). For the reasons that follow, the Court recommends Defendant's motions be **DENIED**.

## I.   FINDINGS OF FACT

TFO Hanson is a police officer with the Minneapolis Police Crime Lab where he performs forensic examinations of technology such as cell phones and computers. He additionally works as a member of the FBI Child Exploitation Task Force. At the hearing, TFO Hanson testified that his work on the FBI Child Exploitation Task Force includes using law enforcement software tools to search the internet for computers distributing child pornography through peer-to-peer file sharing

networks.

On August 18, 2013, TFO Hanson's detection software identified a computer in Windom, Minnesota offering child pornography through the FrostWire peer-to-peer file sharing program. TFO Hanson's computer made contact with the Windom computer and fully downloaded a video labeled "Kait 5YO Golden Shower on Dad.wmv." The video depicted a 4-6 year old girl performing oral sex on an adult male.

TFO Hanson traced the computer's IP address to the internet service provider Windom Net. Windom Net informed TFO Hanson that the IP address in question belonged to subscriber Jeff Peterson and was located at 2212 River Road, Windom, Minnesota. After obtaining Defendant's name and home address, TFO  Hanson ran Defendant's information through a predatory offender database, which identified Defendant as a registered sex offender. TFO Hanson then sought and obtained a search warrant for Defendant's residence.

On October 3, 2013, TFO Hanson and several other law enforcement officers executed a search of Defendant's residence. Upon arriving at Defendant's home, the officers knocked and announced their presence. When no one responded, the officers entered through the unlocked door and conducted a search of the residence. Officers recovered three computers from the home, including a laptop computer found in the garage which contained the video TFO Hanson had downloaded earlier.

After completing the search, an officer contacted Defendant at his place of work and requested that he return home. Defendant agreed and upon arriving at his house, TFO Hanson commenced an interview with Defendant in Defendant's kitchen. The kitchen area was adjacent to the living room and accessible through an open area. *See* Ex. 2. FBI Special Agent Glenn Moule

remained in the kitchen during the course of the interview, while the additional law enforcement officers were out of sight in Defendant's garage. Both TFO Hanson and Special Agent Moule were dressed in plain clothes and possibly were wearing FBI raid jackets. Defendant sat at the kitchen table across from Special Agent Moule and TFO Hanson.

Prior to commencing the interview, TFO Hanson activated a recorder. TFO Hanson first showed Defendant the search warrant and confirmed Defendant's contact information. TFO Hanson then stated that Defendant was not presently under arrest and that "if you don't want to stay here and talk to me you don't have to, it's your choice." Ex. 3 at 1:20-30. Defendant responded that he was willing to answer questions, to which TFO Hanson stated "I just want to make it clear that you don't have to stay here and can go back to work." *Id*. at 1:34-37. Defendant confirmed that he understood. *Id*. at 1:38. The interview lasted approximately 45 minutes in total and at no time during the interview was Defendant handcuffed or restrained. TFO Hanson testified that Defendant appeared both coherent and attentive throughout the interview and that he did not suspect Defendant of being intoxicated.

During the interview, Defendant admitted that he was the primary user of the computer found in the garage and that the computer could only be accessed through a fingerprint scan. *Id*. at 2:08. Defendant stated that he utilized the FrostWire program and searched terms including "anal," "teen," and "young." *Id*. at 14:24, 14:36-42. Approximately twenty minutes into the interview, TFO Hanson asked Defendant if he could examine Defendant's iPhone. *Id*. at 20:33. Defendant responded that there was nothing on the phone from his computer. *Id*. at 20:41. TFO Hanson then asked "do you mind if I pass this back to one of the forensic guys over there in the garage?" *Id*. at 21:16. Defendant again responded that "there's nothing on that thing." *Id*. at 21:16.

TFO Hanson then continued the interview, and Defendant stated that he "looked at things on FrostWire before that I probably shouldn't have." *Id*. at 25:36. Defendant maintained that it had been a long time since he had downloaded or viewed child pornography. *Id*. at 26:50. Approximately forty minutes into the interview, Defendant offered that he had "done some questionable things on [his] computer" but continued to deny viewing the video downloaded from the computer found in the garage. *Id*. at 43:23-50. A few minutes later, TFO Hanson was called away from the interview by forensic team members. *Id*. at 46:25. When TFO Hanson returned, he told Defendant that the officers would need to look at Defendant's iPhone. *Id*. at 50:40. Thereafter, Defendant protested turning over his cell phone to law enforcement, stating "I need my phone" and "there is nothing on that phone." *Id*. at 50:40-56:55. After a five minute exchange between Defendant and the officers regarding the cell phone, TFO Hanson left the kitchen. After returning a few minutes later, TFO Hanson informed Defendant that he would not be taking the cell phone. The officers then concluded the interview and departed from Defendant's home.

Defendant now moves to suppress (1) evidence seized during the October 3, 2013 search of Defendant's residence and (2) the statements Defendant made to law enforcement officers during the course of the interview in Defendant's kitchen.

## II.   CONCLUSIONS OF LAW

### A.    Defendant's motion to suppress evidence obtained through illegal search and seizure should be denied

Defendant moves to suppress evidence seized in the October 3, 2013 search of Defendant's residence, claiming that the search and subsequent seizure were unlawful due to lack of probable cause. ECF No. 21 at 1. Defendant made no particularized challenge to the search warrant in either the hearing or on the papers. The Government contends that the supporting affidavit contained

sufficient probable to search Defendant's home.  Mem. in Opp'n to Def.'s Mot. to Suppress Statements 8, ECF No. 39.

Assuming without deciding that the supporting affidavit lacks the requisite probable cause, the Court concludes that the evidence seized is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See also United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be invalid." citing *Leon*, 468 U.S. at 900)). Here, TFO Hanson drafted an affidavit he believed contained probable cause, relying on the child pornography downloaded through peer-to-peer file sharing from a computer identified to be located at Defendant's residence through the IP address. *See* Ex. 1. TFO Hanson then presented the affidavit to a duly appointed judge and subsequently received the judge's authorization to search. Relying on that authorization, law enforcement officers executed the search of Defendant's residence and seized relevant items. Therefore, to the extent Defendant's motion seeks to suppress evidence seized from Defendant's residence during the course of the search on October 3, 2013, those items are admissible under the good-faith exception and the motion should be denied.

**B.      Defendant's motion for suppression of statements should be denied**

Defendant additionally contends that the statements he made to TFO Hanson and Special Agent Moule should be suppressed because he was in custody and did not receive a *Miranda* warning when being interviewed by law enforcement in his kitchen. Mem. in Supp. of Mot. to Suppress Statements 3-7, ECF No. 38. The Government responds that Defendant's interview was

non-custodial and, therefore, a *Miranda* warning was not required. ECF No. 39 at 9. The Court

agrees with the Government.

A suspect is in custody for *Miranda* purposes if "a reasonable person in his position would

consider his freedom of movement restricted to the degree associated with formal arrest." *United*

*States v. Muhlenbruch*, 634 F.3d 987, 995-96 (8th Cir. 2011) (quoting *United States v. Flores-*

*Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)). In making this determination, courts consider "the

totality of the circumstances that confronted the defendant at the time of questioning" and ask

whether a reasonable person under such circumstances would have felt free to terminate the

interview and leave. *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (citing *Thompson*

*v. Keohane*, 516 U.S. 99, 112 (1995)).

Here, the totality of the circumstances indicate that Defendant was not in custody when being

interviewed by law enforcement officers. The Eighth Circuit has stated that "[t]he most obvious and

effective means of demonstrating that a suspect has not been taken into custody . . . is for the police

to inform the suspect that an arrest is not being made and that the suspect may terminate the

interview at will." *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (internal quotation

marks omitted); *see also United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("That a

person is told repeatedly that he is free to terminate an interview is powerful evidence that a

reasonable person would have understood that he was free to terminate the interview.").

In the present case, prior to commencing the interview, TFO Hanson utilized this "obvious

and effective" method for indicating a non-custodial setting by telling Defendant that he was not

under arrest and that "if you don't want to stay here and talk to me you don't have to, it's your

choice." Ex. 3 at 1:20-30. In fact, TFO Hanson continued to indicate on several occasions

throughout the interview that Defendant was under no obligation to speak with law enforcement—"I just want to make it clear that you don't have to stay here and can go back to work" and "again, you don't have to even continue talking if you don't want to." *Id.* at 1:34-37 and 31:32-36. A reasonable person, after hearing such repetitions and unequivocal statements from a law enforcement officer, could only conclude that he or she was indeed free to terminate an interview and leave.

Moreover, the conclusion that the interview occurred in a non-custodial setting is further bolstered by the physical location of the interview itself—the kitchen in Defendant's home. When police questioning occurs on a defendant's "own turf," courts "have observed repeatedly that the surroundings are 'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'" *Williams*, 760 F.3d at 815 (quoting *Czichray*, 378 F.3d at 826). The kitchen in Defendant's home was partially open and allowed immediate access to Defendant's front door and the living room. The setting of the interview therefore provided Defendant with the opportunity to physically leave should he have desired to terminate the interview. Defendant was not confined to the kitchen and nothing within the environment provided for an "inherently coercive setting."

Based on the totality of the circumstances, the Court concludes that a reasonable person in Defendant's position would have felt free to terminate the interview and leave. Defendant's freedom of movement was not restricted to the degree normally associated with a formal arrest. Accordingly, because Defendant was not in custody when he was interviewed by TFO Hanson, a *Miranda* warning was not required and the motion should be denied.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY**

**RECOMMENDED** that:

1.      Defendant's motion to suppress evidence obtained through illegal search and seizure

      (ECF No. 21) be **DENIED**; and

2.      Defendant's motion for suppression of statements (ECF No. 22) be **DENIED**.


DATED: January 14 , 2015                                  *s/Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 29, 2015** written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 29, 2015** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.